**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

SEP 1 0 2004

JAMES W. McCORMACK, CLERK
By:_____
DEP CLERK

ANGELA JOHNSON                                                    PLAINTIFF

v.                                    No. 4:03CV00652 JLH

PULASKI COUNTY SPECIAL SCHOOL DISTRICT                           DEFENDANT

## OPINION AND ORDER

This is an employment discrimination case. The Pulaski County Special School District ("PCSSD") has moved for summary judgment. For the reasons stated hereinafter, the motion is DENIED.

A court should grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The party moving for summary judgment bears the initial responsibility of informing the district court of the basis of its motion and identifying the portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Group Health Plan, Inc. v. Philip Morris USA, Inc.*, 344 F.3d 753, 763 (8th Cir. 2003). When the moving party has carried its burden under Rule 56(c), the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1985) (quoting Fed. R. Civ. P. 56(c)). The non-moving party sustains this burden by showing that "there are genuine factual issues that properly can be resolved

**2 7**

only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. When a non-moving party cannot make an adequate showing on a necessary element of the case on which that party bears the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323. In deciding a motion for summary judgment, the Court must view the facts and inferences in the light most favorable to the party opposing summary judgment. *Boerner v. Brown & Williamson Tobacco Corp.*, 260 F.3d 837, 841 (8th Cir. 2001). If the evidence would allow a reasonable jury to return a verdict for the non-moving party, summary judgment should be denied. *Derickson v. Fidelity Life Assoc.*, 77 F.3d 263, 264 (8th Cir. 1996).

The Eighth Circuit has said that summary judgment should seldom be granted in discrimination cases where inferences are often the basis of the claim. *Duncan v. Delta Consolidated Indus., Inc.*, 371 F.3d 1020, 1024 (8th Cir. 2004). *Bassett v. City of Minneapolis*, 211 F.3d 1097, 1099 (8th Cir. 2000). *But see Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 762 (8th Cir. 2004) (Arnold, J. dissenting).

Angela Johnson, an African-American female, began working for PCSSD doing custodial duties in 1996. In June 2001, she became the lead custodian for Homer Adkins Elementary School in Jacksonville. In August 2001, the school's maintenance custodian, who supervised Johnson, resigned. Dr. Sue Martin, the school's principal and a white female, told Johnson to perform the maintenance custodian duties temporarily. Despite these added responsibilities, Martin did not pay Johnson the wages due to a maintenance custodian during the time that Johnson performed those duties. Johnson filed a grievance, which was partially upheld.

2

In October 2001, Martin hired Gilbert Farmer, an African-American male, to fill on a temporary basis the position of maintenance custodian at Adkins Elementary. According to Johnson, Martin instructed her to train Farmer in the duties of a maintenance custodian.

In January 2002, Martin attempted to fill the maintenance custodian position on a permanent basis. However, she did not post the job vacancy within the school as required by school policy. Although Johnson had expressed an interest in the position, Martin did not seek an application from Johnson. On January 23, 2002, Martin selected Glen Keister, a white male, for the position. After Keister was hired, according to Johnson, Martin ordered her to train him in the duties of a maintenance custodian. Johnson says that this was her first notice that Martin was actively seeking to fill the position of maintenance custodian.

In a letter dated January 23, 2002, Johnson complained to Troy Lowe, the assistant superintendent for personnel, about Martin's failure to follow the school policy requiring the position to be posted within the school. As a result, PCSSD again posted the vacancy on February 27, 2002. In March 2002, Johnson applied for the position of maintenance custodian. With her application, she submitted a large number of letters of recommendations from employees of Adkins Elementary, employees from other schools where she had worked, and other persons who knew her. These letters were highly complimentary of Johnson and her work. Johnson and one other person were interviewed by a bi-racial committee consisting of Martin and persons from other schools. Martin stated in her affidavit that, after the interviews, she requested that the position be posted again because the persons interviewed, including Johnson, were not suitable for the job. Martin acknowledged that Johnson gave a good interview. Another member of the committee, William Elliot, testified that he thought that both persons interviewed would do a good job. Johnson was not

3

hired. Martin has testified that Johnson was not hired because she had excessive absences and a poor work performance as lead custodian.

In June 2002, PCSSD again posted the position of maintenance custodian. Johnson applied again. Again she was not selected. In January 2003, another bi-racial committee selected Terry Johnson, a white male, to fill the vacancy. Johnson testified that Martin instructed her to train Terry Johnson to be a maintenance custodian. Martin testified that she instructed Johnson to teach Terry Johnson custodial duties.

Johnson testified that Martin once laughed in her face and told her that she would never receive a promotion. Martin testified that she told Johnson that she would never hire a woman to be a maintenance custodian, though Martin says she made this comment in frustration as she was trying to go attend to a class.

Johnson wrote the administration of PCSSD on five occasions making allegations that Martin had treated her unfairly. The last of the letters complained that Martin discriminated against her on the basis of race. Johnson testified that in April 2003, when her contract came up for renewal, Martin threatened to recommend a non-renewal if she continued to make allegations of discrimination. On May 7, 2003, Johnson filed a race and sex discrimination claim and a retaliation claim with the EEOC. Johnson's contract was renewed, but she was transferred to another school. Martin testified that the transfer was due to budgetary reasons.

Where a plaintiff offers no direct evidence of discriminatory intent, the Court analyzes the facts under the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), which means that a plaintiff must demonstrate the following four elements: (1) that she belonged to a protected class, (2) that she met the minimum qualifications and applied for the job,

(3) that despite her qualifications she was denied the position, and (4) that her employer promoted a person of similar qualifications who was not a member of the protected group. *Ghane v. West*, 148 F.3d 979, 981 (8th Cir. 1998); *McCullough v. Real Foods, Inc.*, 140 F.3d 1123, 1126 (8th Cir. 1998); *Rothmeier v. Inv. Advisers, Inc.*, 85 F.3d 1327, 1332 (8th Cir. 1996). Johnson is an African-American female, so she belongs to a protected class. William Elliot, who was a member of the first bi-racial committee, testified that he believed Johnson would do a good job. Johnson also submitted numerous job recommendations from co-workers and deposition testimony from a member of one of the bi-racial committees to show that she met the minimum qualifications for the job. It is undisputed that she was denied the position. It is undisputed that PCSSD hired a white male. Johnson has offered evidence sufficient to create a genuine issue of fact as to whether her qualifications were similar to those of the white male who was hired for the position. Therefore, for purposes of summary judgment, Johnson has established a *prima facie* case.

The establishment of a *prima facie* case creates a rebuttable presumption of discrimination. *McCullough*, 140 F.3d at 1127. The employer may rebut this presumption by articulating one or more non-discriminatory reasons for the employment decision. *Id.* PCSSD has articulated non-discriminatory reasons for the decision not to promote Johnson to the position of maintenance custodian. Martin's submitted affidavit states that Johnson was not selected because of her lack of dependability due to the large number of absences from work during the time that she worked at Adkins Elementary as lead custodian, and because Martin had received numerous complaints concerning poor performance of her custodian duties. With Martin's affidavit, PCSSD submitted records of numerous absences, along with memoranda complaining about Johnson's job

performance. Accordingly, PCSSD met its burden of articulating non-discriminatory reasons for the employment decision.

When the *prima facie* case has been successfully rebutted, the presumption of discrimination drops out of the picture, and the burden shifts back to the plaintiff to present evidence sufficient to support two findings. *Id.* at 1127. First, the plaintiff must present evidence that creates a fact issue as to whether the employer's proffered reasons are mere pretext. Second, she must present evidence that creates a reasonable inference that the adverse employment decision was an act of intentional discrimination based on race or sex. *Id.* Johnson has presented evidence sufficient to support these two findings. First, Martin has admitted in a deposition that she told Johnson that she would never hire a woman as maintenance custodian. Although the employment decision was made by a bi-racial committee, there is evidence that the other members of the committee were likely to defer to Martin in the employment decision, since she was the principal of the school at which the maintenance custodian would work, and since she was the only employee of that school on the committee. Second, Johnson testified in her deposition that Martin asked her to train the two interim maintenance custodians (Farmer and Keister) and Terry Johnson, who was ultimately hired as the permanent maintenance custodian. Martin admitted in her deposition that she asked Johnson to teach Terry Johnson custodial duties. That Martin would ask Johnson to train or teach persons how to perform the job that was denied to her is some evidence from which a reasonable jury might conclude that Martin's claim that Johnson had performed poorly was mere pretext. Third, Johnson submitted with her job application a large number of very favorable recommendations from persons who had worked with her at Adkins Elementary and other places. These favorable recommendations create quite a different picture of Johnson's work performance than the picture drawn by Martin.

6

Viewing the facts in the light most favorable to the non-moving party, it appears that there is a genuine issue of material fact as to Johnson's claim of employment discrimination.

PCSSD has also moved for summary judgment on Johnson's claim of retaliation.   To establish a *prima facie* case of retaliatory discrimination, the plaintiff must show that she engaged in protected activity, that an adverse employment action was taken against her, and that there was a causal connection between the two. *Brower v. Runyon*, 178 F.3d 1002, 1005 (8th Cir. 1999). *See also Watson v. O'Neill*, 365 F.3d 609, 613 (8th Cir. 2004). Attached to Johnson's affidavit is a letter dated September 9, 2002, from Johnson to the superintendent of PCSSD and other persons in the administration of PCSSD alleging that Martin had engaged in racial discrimination by failing to approve overtime to which Johnson was entitled and by requiring Johnson to sign out when she would leave the campus, whereas white males were not required to sign out to leave the campus. Three days later, on September 12, 2002, Johnson interviewed, for the last time, for the maintenance custodian position at Adkins Elementary. The interview was conducted by Martin and two assistant principals from other schools. The interviewers were required to rate the candidate on certain criteria on a rating scale from zero, which signified unacceptable, to four, which signified superior. Martin gave Johnson the lowest possible rating on her ability to implement the job description and on her ability to work with people. In January 2003, a decision was made to hire Terry Johnson for the position of maintenance custodian. Johnson states that in April 2003 she was told that her contract would not be renewed, and that she believed the threat of non-renewal was in retaliation for her complaints. She filed her EEOC charge on March 7, 2003. As stated above, her contract was renewed, but she was transferred to a different school.

PCSSD first argues that Johnson cannot establish an adverse employment decision because her contract was renewed. However, since Johnson had alleged in September 2002 that Martin had committed racial discrimination against her, and since the decision was made in January 2003 to hire Terry Johnson as maintenance custodian, an adverse employment decision was made. In view of the temporal proximity between Johnson's complaint of racial discrimination and the negative interview evaluation, which resulted in the decision in January 2003 to hire someone else, an inference can be drawn that there was a causal connection between the two. *Cf. EEOC v. Kohler Co.*, 335 F.3d 766, 774 (8th Cir. 2003).

PCSSD argues that Johnson cannot assert that the retaliation occurred in January 2003 when PCSSD hired Terry Johnson for the position of maintenance custodian at Adkins Elementary because in her EEOC complaint she stated that the retaliation occurred in April 2003 when the threat was made not to renew her contract. The Eighth Circuit does not require that subsequently-filed lawsuits mirror the administrative charges. *Duncan*, 371 F.3d at 1026. A Title VII plaintiff must file a charge of discrimination with the EEOC before bringing a civil suit, but the scope of the subsequent action is not necessarily limited to the specific allegations in the charge. *Id.* However, the sweep of any subsequent judicial complaint may only be as broad as the scope of the EEOC investigation that could reasonably be expected to grow out of the charge of discrimination. *Id.* Johnson's charge of discrimination included a charge that she was denied a promotion and that a less qualified white male was selected for the position denied her. She checked the boxes for discrimination based on race, sex, and retaliation. Hence, the EEOC investigation could reasonably be expected to encompass the circumstances of the January 2003 decision to hire Terry Johnson, including an

inquiry as to whether that decision was motivated by retaliation for Johnson's previous complaints that Martin had discriminated against her.

PCSSD argues that Johnson's claims are time-barred to the extent that those claims concern adverse employment decisions that occurred more than 180 days prior to the date she filed her EEOC charge, which was May 7, 2003.  Johnson responds that PCSSD hired Terry Johnson to the maintenance custodian position in January 2003, which was less than 180 days before she filed her EEOC charge.  She also includes in her complaint allegations of racial discrimination under 42 U.S.C. § 1981.  She says that the statute of limitations did not expire on any of her racial discrimination claims.  For purposes of the pending motion for summary judgment, the Court need not reach Johnson's latter argument.  Although discriminatory acts are not actionable if time-barred, those acts may constitute relevant background evidence in support of a timely claim.  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002); *Saulsberry v. St. Mary's Univ. of Minnesota*, 318 F.3d 862, 865 (8th Cir. 2003).  Johnson's claims regarding the January 2003 hiring of Terry Johnson are not time-barred.  Summary judgment would be improper as to that claim.  Issues as to the relevance of other alleged acts of discrimination can be considered in the context of trial and any motions *in limine* the parties may wish to file.

## CONCLUSION

Defendant's motion for summary judgment (Docket #11) is DENIED.

IT IS SO ORDERED this ___10th___ day of September, 2004.

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE

THIS DOCUMENT ENTERED ON
DOCKET SHEET IN COMPLIANCE
WITH RULE 58 AND/OR 79(a) FRCP
ON _9/10/04_ BY _____

9

F I L E   C O P Y

bt

UNITED STATES DISTRICT COURT
Eastern District of Arkansas
U.S. Court House
600 West Capitol, Suite 402
Little Rock, Arkansas 72201-3325


September 10, 2004



* * MAILING CERTIFICATE OF CLERK * *


Re:  4:03-cv-00652.


True and correct copies of the attached were mailed by the clerk to the
following:

        John W. Walker, Esq.
        John W. Walker, P.A.
        1723 Broadway
        Little Rock, AR  72206-1220

        Shawn Garrick Childs, Esq.
        John W. Walker, P.A.
        1723 Broadway
        Little Rock, AR  72206-1220

        George Jay Bequette Jr., Esq.
        Skokos, Bequette & Billingsley
        TCBY Tower
        425 West Capitol Avenue
        Suite 3200
        Little Rock, AR  72201-3469

        press


                                    James W. McCormack, Clerk

             9/10/04                         BTyree
Date: _____      BY: _____